[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on September 28, 1991 at Monroe, Connecticut. The defendant has resided continuously in this State since that time. There is one minor child issue of the marriage, Matthew Fama, born August 22, 1992.
The evidence presented at trial establishes that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in §§ 46b-56, 46b-81, 46b-82 and 46b-84 of the Conn. General Statutes in reaching the decision reflected in the orders that follow.
The parties were married in September 1991. Their child was born in August 1992. In July 1993, the plaintiff and the minor child left the marital apartment and returned to her parents' home CT Page 18 in New York State where she continues to reside with the minor child.
Neither party could give a reasonable, valid reason for the breakdown of the marital relationship. The parties went to marital counselling before the separation but, unfortunately, the parties were unable to resolve their marital difficulties.
The court declines to assess fault to either party for the breakdown of their marriage.
There is no real estate involved in this matter and the parties have already divided up their personal property. The plaintiff specifically declined any award of alimony.
The only issue in this matter which consumed over a day's hearing involved the question of visitation by the defendant with the minor child who is now 28 months of age.
The defendant is 31 years of age and in good health. He has been steadily employed by the same employer for the past seven years. Since the separation of the parties in June 1993, the defendant has made regular and consistent visits to New York to visit with his son. The Family Relations counsellor observed a close, happy and loving relationship between the defendant and his son. The defendant was able to appropriately care for his son's needs during his visitation.
The plaintiff is 32 years of age and in good health. At the present time, the plaintiff is unemployed and is living with her parents, both of whom are retired. Prior to her marriage, the plaintiff was gainfully employed and has excellent skills for the labor market when she decides to return to work. The plaintiff indicated her parents would provide necessary day care for her child. The plaintiff has a B.A. degree in business administration.
The plaintiff is concerned over the defendant having overnight visitation in Connecticut. She has put forth many roadblocks and excuses to thwart the defendant's request for overnight visitation in Connecticut. Because the plaintiff has chosen to remain in New York, the defendant only has weekend visitation and weekday visitation is not possible at this time.
The only concern of the plaintiff's, which this court finds to be a valid concern, is the issue of lead paint in the defendant's CT Page 19 apartment. This, of course, is the same apartment the parties and this minor child lived in until the child was approximately ten months of age.
The defendant testified that the landlord has replaced the windows in question. Any overnight visitation in Connecticut at the defendant's apartment shall be subject to the defendant obtaining a Certificate of Abatement. The defendant claims that he will have the necessary certificate within the next ten days.
The plaintiff presented a rather formidable preliminary list of items required for extended visitation in Connecticut (Defendant's Exhibit E). If the child requires any special medication or supplies such as his favorite toy or bottle, then the plaintiff shall supply the same to the defendant and the defendant shall return the same to the plaintiff when the child is returned. The list prepared by the plaintiff may serve as a guide for the defendant as to what the child likes and enjoys, such as his favorite foods.
The plaintiff also had a concern over the lack of safety bars on the windows in the defendant's apartment. The defendant indicated he would install appropriate safety bars before he had any overnight visitation.
The plaintiff's other concerns, such as a hot stove, hot radiator, sharp edges, et cetera, appear to this court to be the concerns of an overly protective mother. In handling a young child of 28 months all parties must be vigilant at all times and make reasonable efforts and use due care to keep the child safe from harm. It is in the best interest of there child that overnight visitation commence within a reasonable period of time.
The plaintiff requested sole custody of the minor child and the defendant requested joint custody. Although the parents have some difficulty in communicating with each other, there is not present any hostility which would prevent future cooperation between the parties. The parties must understand that, although they are getting divorced, neither is divorcing their child. Both parents will have to strive to work together to do what is in the best interests of their child.
To award sole custody to the plaintiff would allow the plaintiff complete control over everything in this young child's life and the defendant would be completely shut out, in spite of CT Page 20 certain statutory safeguards.
The plaintiff's preliminary List of Supplies and Equipment (Defendant's Exhibit E), as well as the plaintiff's letter to F.R.O. dated May 23, 1934 (Defendant's Exhibit D), indicate the lengths and depths of roadblocks plaintiff would put up. To award sole custody to the plaintiff would be to shut out the defendant completely from any input into his child's welfare and such an award would not be in the best interests of the minor child.
The court had the opportunity to observe the demeanor of the plaintiff and the defendant. The court has had the benefit of the Family Relations report and testimony and the comments and well directed questions of the court-appointed guardian ad litem.
The court has also considered the relevant and appropriate statutory criteria in reaching the decisions reflected in the orders that follow:
A. Custody
1. There shall joint legal custody of the minor child with primary physical residence to the plaintiff.
2. The parties shall confer and consult with one another with respect to the health, education and welfare of the minor child. The defendant shall be entitled to copies or all medical and school reports and school activities and shall be advised whenever the child is ill. Neither parent shall denigrate the other in the presence of the minor child and both parents shall foster love and respect by the child for each parent.
B. Visitation
The defendant shall be entitled to reasonable,, flexible and liberal visitation to include the following:
 1. For the next two Saturdays, Mr. Fama will visit on premises from nine a.m. to ten a.m. and off premises from ten a.m. to four p. m.
 2. Thereafter, the next two Saturdays, visits will be off premises from nine a.m. until four p. m.
3. Thereafter, the next three visits shall be on Saturday CT Page 21 from ten a.m. to Sunday at five p. m., overnight.
 4. Thereafter, the defendant shall have alternating weekends commencing on Friday at six p. m. to Sunday at five p. m.
 5. The drop off and pick up for all overnight visitation shall be at the Danbury Mall at the carousel ride. Each party shall give the other 24 hours' notice of cancellation. There is also a commuter lot next to the Danbury Mall, if that location is more convenient and agreed to by both parties.
 6. The defendant shall have the child on the weekend of Father's Day.
7. The plaintiff shall have the child on Mother's Day.
 8. The parties shall alternate the holidays of Memorial Day, Labor Day and Veteran's Day. If the defendant's weekend falls on the Sunday preceding one of the above holidays to which the defendant is entitled, then the defendant shall return the child on Monday at five p. m.
 9. The parties shall alternate Easter, July 4 and the Thanksgiving holiday.
 10. The defendant shall have visitation Christmas Day from one p. m. until five p. m. the following day.
11. The plaintiff shall have Christmas Eve.
 12. The defendant shall have one week during the summer to coincide with the defendant's vacation time.
 13. On all overnight visitations, the plaintiff shall supply appropriate clothing for the child as well as his favorite toy and bottle. If the child is on special medication as prescribed by the pediatrician, the defendant shall be given the special medication and appropriate instructions for its use. The plaintiff shall endeavor to make the overnight visitation a pleasant experience for the minor child and the defendant shall refer to the plaintiff's list of necessities to ensure the child's comfort and needs.
 14. overnight visitation is subject to the defendant obtaining a Certificate of Abatement with respect to the lead CT Page 22 paint problem in the defendant's apartment.
 15. The visitation schedule shall be reviewed when the child attends school in the first grade.
 16. The defendant shall be entitled to spend time with the minor child on the child's birthday.
 17. The defendant shall advise the plaintiff, is possible, if he is going to be late for visitation. The plaintiff will have to keep in mind the weather conditions and traffic may cause the defendant to be late without being able to telephone.
C. Child Support
The defendant shall pay to the plaintiff as child support the sum of $84 per week commencing January 9, 1995 until such time as the child becomes emancipated, reaches the age of 19 years, completes the twelfth grade or dies, whichever event shall first occur.
D. Tax Exemption
The defendant shall be entitled to claim the child as an exemption for tax purposes for the year 1994 if the parties file separate tax returns for 1994. Thereafter, the defendant shall be entitled to claim the child as an exemption provided he is current in the child support payments as of December 31.
E. Alimony
The plaintiff requested no alimony in her claims for relief and none is awarded.
F. Debts
The defendant shall be solely responsible for the debts as listed on his financial affidavit and shall hold the plaintiff harmless therefrom.
G. Arrears
The court finds there is an arrears in the amount of $109. Said arrears shall be paid by the defendant in full within 30 days CT Page 23 of date.
H. COBRA Benefits
The defendant testified he would be able to maintain his wife on his medical insurance coverage without cost to himself. The plaintiff shall be entitled to COBRA benefits as are available at the defendant's place of employment for a period of one year without cost to the plaintiff. This provision shall be modifiable in the event there is a cost to the defendant for such coverage. Any uninsured or unreimbursed medical expense shall be the plaintiff's obligation.
I. Medical Coverage
1. The defendant shall maintain and keep in full force and effect the medical and dental insurance as is available through his employment for the benefit of the minor child. All unreimbursed medical, dental, eye care, orthodontic and psychological counselling shall be equally divided between the parties.
2. The defendant shall provide any necessary forms and/or cards enabling the plaintiff to utilize his medical coverage as needed for the minor child.
J. Life Insurance
The defendant presently has a life insurance policy in the face amount of $25,000 (twenty-five thousand dollars). The defendant shall maintain said policy with the plaintiff to be designated as trustee for the benefit of the minor child for so long as the defendant has an obligation for child support. This provision shall be modifiable.
K. Fees of Guardian Ad Litem
The court appointed a pro bono guardian ad litem without the benefit of financial affidavits and on the representation of counsel that neither party had funds.
The court is now dismayed to see that, on the filing of the financial affidavits, the plaintiff has liquid funds of approximately $31,000. The court understand that these funds represent earnings and a Workmen's Compensation award that accrued to the plaintiff prior to the marriage. CT Page 24
The court is also aware that the plaintiff will have to use some of those funds to obtain transportation for herself in connection with the pick up and return of the minor child for visitation purposes.
The pro bono guardian ad litem is a member of and is employed by Legal Aid in Derby, Connecticut and therefore does not bill for her services.
The court orders that the plaintiff shall donate the sum of $500 to Friends of Legal Services, c/o Lisa W. Kline, 30 Elizabeth Street, Derby, Connecticut, 06401, within 30 days of date.
The defendant shall donate the sum of $200 to the Friends of Legal Services, c/o Lisa w. Kline, 30 Elizabeth Street, Derby, Connecticut, 06401, within 90 days of date.
The guardian actively participated in this court trial which lasted for a day and a half, in addition to interviewing the parties and reviewing the Family Relations reports.
Coppeto, J.